**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HARTFORD FIRE INSURANCE COMPANY,**

                    **Plaintiff,**

          v.	5:11-CV-677
	(FJS/DEP)
**SAUNDERS CONCRETE COMPANY, INC.,**
**CANASTOTA CONCRETE COMPANY, INC.,**
**CORTLAND READY-MIX, INC., MICHAEL T.**
**SAUNDERS, and TRACY SAUNDERS,**

                    **Defendants.**
_____

**APPEARANCES**	**OF COUNSEL**

**WOLFF & SAMSON PC**	**ANDREW S. KENT, ESQ.**
One Boland Drive
West Orange, New Jersey 07052-1776
Attorneys for Plaintiff

**COSTELLO, COONEY & FEARON, PLLC**	**ROBERT W. CONNOLLY, ESQ.**
500 Plum Street, Suite 300	**ROBERT J. SMITH, ESQ.**
Syracuse, New York 13204
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Hartford Fire Insurance Co. brings this action against Defendants to enforce a written General Indemnity Agreement ("Agreement") under which Defendants agreed, among other things, to indemnify Plaintiff and hold it harmless from and against any losses, liability, or

claims resulting from its issuance of surety bonds on Defendants' behalf.  Currently before the Court is Plaintiff's motion for partial summary judgment and final judgment as to its second claim, or, alternatively, for a preliminary injunction directing Defendants to deposit funds in the amount of $2,250,000 with Plaintiff.

## II. BACKGROUND

On July 6, 2010, at Defendant Saunders Concrete Company, Inc.'s ("Defendant Saunders") request, Plaintiff issued a $1,926,022 surety Subcontract Performance Bond, Bond No. 01 BSB AA6691, ("Bond"), in favor of M.A. Mortenson Company ("Mortenson"), securing Defendant Saunders' performance on a subcontract between Defendant Saunders and Mortenson in connection with a wind turbine construction project ("Subcontract").  Mortenson contends that Defendant Saunders breached the Subcontract by defectively performing its work on the project; and, on November 12, 2010, Mortenson declared that Defendant Saunders was in default.  On March 31, 2011, pursuant to the Subcontract, Mortenson filed a demand for arbitration against Defendant Saunders and Plaintiff.[1]

---

[1] Shortly thereafter, Mortenson and Defendant Saunders separately commenced related lawsuits against each other.  On April 7, 2011, Defendant Saunders commenced an action in New York state court alleging various claims against Mortenson relating to the Subcontract, and the matter was subsequently removed to the U.S. District Court for the Northern District of New York ("New York Action").  *See Saunders Concrete Co., Inc. v. M.A. Mortenson Co.*, 5:11-CV-428.  Judge McAvoy stayed the New York Action because the issues Plaintiff raised "appear[ed] to be matters likely to be resolved in connection with the proceedings in the District of Minnesota or in arbitration . . . ."  *See id.*, Dkt. No. 18 at 1.  In the District of Minnesota action that Mortenson commenced on April 14, 2011 ("Minnesota Action"), Mortenson moved to compel arbitration on all claims against Saunders and Hartford.  *See M.A. Mortenson Co. v. Saunders Concrete Co., Inc.*, No. 11-935, 2011 WL 2672248 (D. Minn. July 8, 2011).  In the Minnesota Action, the court, among other things, issued an order compelling Saunders (but not Hartford) to arbitrate and further dismissed the case without prejudice.  *See id.*  By virtue of those
(continued...)

Following Defendant Saunders' alleged default, Mortenson called upon Plaintiff, as surety, to perform under its Bond by way of a claim in the amount of $1,926,022 plus interest and expenses ("Claim"). Pursuant to the Agreement, which Defendants executed on June 17, 2010, in favor of Plaintiff in consideration of Plaintiff's issuance of the Bond guaranteeing Defendant Saunders' performance under the Subcontract, Plaintiff demanded that Defendants immediately deposit funds, as collateral, in the amount necessary to protect it from any losses or liability on the Claim. In its motion for partial summary judgment on its second claim, or, alternatively, for a preliminary injunction, Plaintiff contends that the Court should enforce Defendants' collateral deposit obligation under the Agreement.[2]

The Agreement provides, in pertinent part, the following:

> The Indemnitors [Defendants] shall at all times indemnify, exonerate and hold [Plaintiff] Hartford harmless from and against any Loss, claims, demands, liabilities, suits and causes of action which are in any way related to any Underwriting activities, Bonds or this Agreement.
>
>             \*     \*     \*
>
> Upon Hartford's demand, the Indemnitors shall immediately deposit with Hartford funds, as collateral, in an amount Hartford deems necessary at the time of said demand to protect itself from

---

[1](...continued)
outcomes, since the New York Action was stayed in deference to the Minnesota Action and the Minnesota Action did not compel Plaintiff Hartford to arbitrate, Defendants contend that Plaintiff no longer remains exposed to any potential liability of loss in the case at bar, as is further discussed below.

[2] Aside from claim two, the other two claims for relief in Plaintiff's complaint — not at issue in the instant motion for partial summary judgment or, alternatively, for a preliminary injunction — are for the recovery of expenses and attorney's fees (claim one) and to compel Defendants to make available to Plaintiff their books and records for inspection and copying (claim three).

> actual or anticipated Loss.  Demand may be made as soon as a) Hartford determines that liability exists; or b) Hartford has a reasonable basis to believe that it may incur Loss; . . . or d) in the event Hartford deems itself insecure, whether or not Hartford has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any claim in whole or in part. . . . The Indemnitors acknowledge and agree that their failure to immediately deposit with Hartford any sums demanded under this section shall cause irreparable harm to Hartford for which it has no adequate remedy at law.  Indemnitors agree and shall stipulate in any legal proceeding that Hartford is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary.

*See* Dkt. No. 1, Exh. "A" attached thereto.

### III. DISCUSSION

A suretyship is a three-party relationship in which the surety (Plaintiff) is obligated to perform for an obligee (Mortenson) if the principal (Defendant Saunders) fails to do so.  As surety, Plaintiff contends that it became and remains exposed to Mortenson's Claim and/or its arbitration demand for the full penal sum of the Bond plus interest and expenses; and, accordingly, by letters dated April 11, 2011, April 21, 2011, and May 11, 2011, under the terms of the Agreement, Plaintiff demanded that Defendants provide collateral.

Defendants do not contest that, pursuant to the Agreement, Plaintiff can demand collateral if and when it "determines that liability exists," or it "has a reasonable basis to believe that it may incur liability or Loss," or it "deems itself insecure, whether or not Hartford has made any payment or established any reserve and **whether or not it has received notice of, accepted or denied any claim** in whole or in part."  *See* Dkt. No. 17 at 3 (emphasis added).  Defendants emphasize that "[n]ot until on or about March 31, 2011, did Mortenson make such a claim, by

filing and serving a demand for arbitration against Saunders and Hartford . . . ." *See id.* Thus, Defendants argue, Plaintiff's right to demand collateral was triggered only by Mortenson's arbitration demand; and, since that action has since been dismissed and Plaintiff has not been compelled to arbitrate, Plaintiff cannot invoke its right to demand collateral under the Agreement because it is not facing any risk of liability. In short, Defendants contend that the basis upon which Plaintiff based its right to demand collateral is no longer valid.

However, Plaintiff contends that it remains exposed to the Claim and the arbitration regardless of whether or not it voluntarily engages in the arbitration proceeding.[3] As discussed, Plaintiff issued the Bond in favor of Mortenson, which secured Defendant Saunders' performance on the Subcontract between Defendant Saunders and Mortenson. The Court agrees with Plaintiff that, although the court in the Minnesota Action did not compel Plaintiff to arbitrate, Plaintiff could nonetheless face liability or loss as a result of the Mortenson-Saunders arbitration.

In any event, pursuant to the clear terms of the Agreement, Plaintiff was permitted to demand collateral whenever it reasonably deemed itself to be insecure, *regardless of when or*

---

[3] Plaintiff asserts that it could be subject to additional exposure if it declines Mortenson's purported "invitation to voluntarily participate in the arbitration." In this regard, Plaintiff cites to an email received from Mortenson's counsel, stating that

> Mortenson and Saunders are now in the process of selecting arbitrators. Accordingly, the time is now ripe for Hartford to decide whether it intends to voluntarily participate in the arbitration, consistent with our prior discussions. That is, if Hartford declines to participate voluntarily in the arbitration, Mortenson will have to take other steps to preserve its bond claim, which will undoubtedly result in both sides incurring additional litigation expense that could otherwise be avoided.

*See* Kent Decl. at ¶ 13 & Exh. S.

*whether it had received notice of a claim against it*. As such, and because the circumstances in this case warranted insecurity, *see* Dkt. No. 12-3, Exhs. "C," "F," "G," "H," & "I" attached thereto, the Court finds that Plaintiff reasonably sought to avail itself of its express right under the Agreement to demand collateral based on its belief that it might incur liability or loss and, thus, permissibly deemed itself insecure unless or until Defendants provided sufficient collateral.[4] *See U.S. Fidelity & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 922 (E.D.N.Y. 1999) (finding that "[c]ourts in New York have routinely upheld the validity of collateral security clauses and enforced their terms" (collecting cases)).

Accordingly, with regard to Plaintiff's motion for partial summary judgment, or, alternatively, for a preliminary injunction, the Court finds that Plaintiff is entitled to demand Defendants' compliance with their collateral deposit obligation under the Agreement. The Agreement entitled Plaintiff to demand a deposit of monetary funds.[5] Plaintiff seeks a collateral deposit in the amount of $2,250,000 — that is, the penal sum of the Bond ($1,926,022) plus costs and expenses related to its ongoing exposure to "pre-judgment interest and investigatory/defense costs associated with the Claim." *See* Dkt. No. 12-1 at 13. The Court finds that Plaintiff is entitled to a collateral security deposit pursuant to the Agreement and, thus, grants Plaintiff's

---

[4] Furthermore, with regard to Defendants' contention that Plaintiff improperly or insufficiently pled that it had satisfied the conditions precedent to demanding collateral under the terms of the Agreement, Rule 9(c) of the Federal Rules of Civil Procedure provides that, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed," Fed. R. Civ. P. 9(c); and, here, Plaintiff has met this minimal pleading requirement.

[5] Plaintiff also indicated that it would accept collateral in the form of "an irrevocable letter of credit, under terms and from a bank acceptable" to it. *See* Cranston Decl., Exhs. "J" & "K" attached thereto. Counsel for Plaintiff apparently turned down proposed collateral in the form of real property.

motion to the extent it seeks a mandatory preliminary injunction to that effect.

## IV. CONCLUSION

Accordingly, having carefully reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion is **GRANTED** insofar as it seeks a mandatory preliminary injunction directing Defendants to deposit the penal sum of the Bond, **$1,926,022**, plus reasonable costs and expenses in the amount of **$323,978** related to Plaintiff's potential ongoing pre-judgment interest and exposure to liability or loss, into an escrow account pending the outcome of this case; and the Court further

**ORDERS** that Defendants are directed to deposit **$2,250,000 (**$1,926,022 plus $323,978) into an escrow account pending the outcome of this case; and the Court further

**ORDERS** that, within **ten** days of the date of this Memorandum-Decision and Order, the parties shall file and serve letter briefs, of no more than five pages in length, setting forth their respective positions regarding what remains to be accomplished to resolve this matter.

**IT IS SO ORDERED.**

Dated: September 1, 2012
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge